FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2011 JUN 30 PM 12: 35

CLERK _L. Fletcher_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOHN BRANDON KITCHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 110-010 |
| | ) | |
| ANDREA FARMER, Nurse, and | ) | |
| VERONICA WAY, Nurse, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at the Richmond County Jail ("the Jail") in Augusta, Georgia. The case is now before the Court on Defendants' motion for summary judgment. (Doc. no. 20.) When Plaintiff initially failed to respond to the motion for summary judgment, the Court issued an Order explaining the ramifications of failing to file a response to Defendants' motion, granting an additional 21 days in which to respond, and directing Plaintiff to file a response within the allotted time. (Doc. no. 22.) Thereafter, Plaintiff indicated his decision not to file a formal response because of his lack of legal knowledge; Plaintiff stated, however, that he did not wish to abandon his claims.[1] (Doc. no.

---

[1] In addition to the Court's Order instructing Plaintiff about the effect of failing to respond and giving him additional time to prepare a response, the Clerk initially gave Plaintiff notice of Defendants' motion for summary judgment at the time it was filed, and also apprised him of his right to file affidavits or other materials in opposition and informed him of the consequences of failing to respond. (Doc. no. 21.) Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are

23.) For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendants Farmer and Way, and that this civil action be **CLOSED**.

## I. FACTS

As noted above, Plaintiff was an inmate at the Jail during the time period relevant to this case. (See doc. no. 7, p. 3.) Defendants both worked at the Jail during that time period; Defendant Way worked as a licensed practical nurse ("LPN"), and Defendant Farmer worked as a registered professional nurse ("RN"). (Doc. no. 20-6 (hereinafter "Farmer Aff."), ¶ 2; doc. no. 20-7 (hereinafter "Way Aff."), ¶ 2.)

Plaintiff alleged in his amended complaint that he injured his hand in October of 2009 and, despite having submitted multiple sick-call slips, he was not seen by a doctor until his arm became discolored and swollen and his knuckles were "displaced." (Doc. no. 7, p. 5.) Plaintiff further alleged that after an x-ray of his hand was taken, Defendant Way told him that "nothing was wrong." (Id.) According to Plaintiff, the purportedly inadequate and delayed treatment he received caused a condition he referred to as "dead hand," which he explained as the formation of scar tissue due to blood pooling over an extended period. (Id. at 6.) Plaintiff also averred that he had not regained full use of his hand, had developed carpal tunnel syndrome, and was in constant pain. (Id.)

Additionally, Plaintiff alleged in his amended complaint that he had filled out a sick-call slip in an attempt to change his antidepressant medication, but Defendant Farmer refused to accept the sick-call slip. (Id.) Plaintiff also stated that Defendant Farmer failed to provide

---

satisfied.

2

him with pain medication that he had been prescribed. (Id. at 7.) Based on the allegations in the amended complaint, the Court allowed Plaintiff to proceed against Defendants with claims of deliberate indifference to his medical needs.[2] (Doc. no. 10, pp. 3-4.)

The medical records and affidavit testimony provided in support of the instant motion show that Plaintiff injured his left hand on October 28, 2009. (Doc. no. 20-7 (hereinafter "Way Aff."), ¶ 6 & Ex. A; doc. no. 20-8 (hereinafter "Rogers Aff."), ¶ 7 & Ex. A.) Plaintiff stated in his deposition that the injury occurred as a result of attacking another inmate, whom he hit repeatedly in the ribs for stealing from him; according to Plaintiff, he untruthfully told medical staff that his injury was self-inflicted to avoid being disciplined for fighting. (Doc. no. 20-4 (hereinafter "Pl.'s Dep."), pp. 8-9.) The other evidentiary material submitted by Defendants suggests that Plaintiff injured his hand by repeatedly striking a wall in the Jail. (Way Aff. ¶ 6; Rogers Aff. ¶ 7; doc. no. 20-5, pp. 39, 47, 57, 64 (University Hospital medical records).)

On the date of the incident, October 28, 2009, Plaintiff's injury was reported to Michael Rogers, M.D., an internist employed by the Medical College of Georgia who was one of the "physicians in charge" at the Jail's medical department. (Rogers Aff. ¶¶ 3-4, 9.) Dr. Rogers ordered x-rays of Plaintiff's hand "to rule out any fracture or relocation." (Id. ¶ 9.) Based on his review of the radiology report, Dr. Rogers determined that Plaintiff "did not

---

[2]Contemporaneously with the Order allowing Plaintiff to proceed with these claims, the Court issued a Report and Recommendation in which it recommended the dismissal of two other Defendants named in the amended complaint, as well as Plaintiff's claim regarding an alleged violation of the Health Insurance Portability and Accountability Act and Plaintiff's claims involving injuries allegedly suffered by other inmates. (See doc. no. 8.) The Court's Report and Recommendation was later adopted as the opinion of the District Court. (Doc. no. 11.) Thus, only the limited claims discussed above remain in this case.

3

have any acute fracture or dislocation of his left hand." (Id. ¶ 9 & Ex. A (bates stamp "KITCHENS 035" attached to Aff.).)

Later on October 28th, Plaintiff submitted a "Health Services Request" form, indicating that his left hand was "broken and swollen," and that he had "knuckle deviation," causing significant pain. (Pl.'s Dep., Ex. 2.) Defendant Farmer received that form the next day and examined Plaintiff's hand, finding it to be "swollen and painful." (Id. (reflecting Defendant Way's documentation of Plaintiff's complaint and her treatment); Way Aff. ¶¶ 7-8.) Defendant Way also reviewed Plaintiff's medical records at that time, discovering that he had received medical attention immediately following his injury the day before, including the x-rays of his left hand that were "normal." (Way Aff. ¶ 9.) As an RN, Defendant Way was not qualified to prescribe medications or make orders regarding an inmate's medical treatment. (Id. ¶ 2.) Accordingly, following her examination of Plaintiff's hand on October 29, 2009, she referred him to a physician and documented several recommendations for Plaintiff's treatment, including elevation of Plaintiff's hand, administration of a "protocol" dose of Motrin, and review and presentation of an inmate education handout. (Id. ¶ 9; Pl.'s Dep., Ex. 2.) Later the same day, Defendant Way received an order from Myra Pope, M.D., for Plaintiff to receive 800 milligrams of Motrin twice daily for 14 days and to be scheduled for an appointment with a physician. (Way Aff. ¶ 10.)

Pursuant to Defendant Way's referral and Dr. Pope's subsequent directive, Plaintiff was seen on October 30, 2009, by Dr. Rogers. (Rogers Aff. ¶ 10.) During his evaluation, Dr. Rogers documented "significant swelling" of Plaintiff's left hand with "some discoloration at the knuckles." (Id.) Dr. Rogers noted that the x-rays from October 28th did

4

not reveal any fracture, but he ordered repeat x-rays of Plaintiff's hand to ensure that no changes had occurred and to rule out the possibility of a "mallet fracture." (Id. & Ex. A (bates stamp "KITCHENS 006" and "KITCHEN 051" attached to Aff.).) Dr. Rogers' review of the October 30, 2009 radiology report showed no change from the previous report and confirmed that there was no fracture, dislocation, or misalignment. (Id. ¶ 11 & Ex. A (bates stamp "KITCHENS 034" attached to Aff.).)

Plaintiff again reported to the Jail's medical department on November 2, 2009, at which time he was seen by Defendant Way. (Way Aff. ¶ 12.) Defendant Way took Plaintiff's vital signs and examined his hand, which she found to be warm and swollen. (Id. & Ex. A (bates stamp "KITCHENS 54" attached to Aff.).) After reviewing his records and seeing that he had previously had two x-rays, she brought Plaintiff's condition to the attention of Dr. Pope, who ordered that Plaintiff be sent to the University Hospital emergency room for additional treatment. (Id.) Plaintiff was transferred on the same day, and while at University Hospital was outfitted with a splint for his left hand. (Doc. no. 20-5, p. 39.)

Upon his return to the Jail later that day he was seen by Defendant Farmer. (Farmer Aff. ¶ 6 & Ex. A (bates stamp "KITCHENS 54" attached to Aff.).) She noted that Plaintiff's "cast[3] was dry and intact with good circulation and capillary refill in his fingers." (Id.) Following her examination, she contacted the physician in charge to obtain orders for Plaintiff's pain medication; in response, Dr. Pope provided verbal orders for Plaintiff to

---

[3]Although Defendant Farmer uses the term "cast" in her affidavit and notations in Plaintiff's medical records, the Court presumes that she refers to the splint Plaintiff received on November 2, 2009; Plaintiff's medical records indicate that he received a splint on November 2nd and that he was given a cast at a later date. (See doc. no. 20-5, pp. 39, 51.)

5

receive a specified dosage of Percocet and Motrin. (Id. ¶ 7.) Defendant Farmer documented Dr. Pope's orders, and provided the medication as directed. (Id. & Ex. A (bates stamp "KITCHENS 007" and "KITCHEN 023" attached to Aff.).)

Defendant Farmer attests that, as an LPN, her contact with Plaintiff was limited to the taking his vital signs and providing physician-ordered medications. (Id. ¶ 8.) Both she and Dr. Rogers attest that treatment of Plaintiff's left hand injury was outside the scope of the care she provided or was qualified to provide. (Id.; Rogers Aff. ¶ 16.) Plaintiff confirmed in his deposition testimony that Defendant Farmer had no involvement in attending to his hand injury. (Pl.'s Dep., p. 22.)

Dr. Rogers next saw Plaintiff on November 5, 2009. (Rogers Aff. ¶ 12.) During that visit, Dr. Rogers noted that Plaintiff's left hand showed no sign of "compartment syndrome and no swelling in his fingers." (Id.) Pursuant to instructions from a physician at University Hospital, Dr. Rogers completed the necessary paperwork for Plaintiff to receive follow-up care at the University Hospital Orthopedic Clinic. (Id. at 13-14 & Ex. A (bates stamp "KITCHENS 006" and "KITCHENS 007" attached to Aff.).) According to Plaintiff's University Hospital medical records, he appears to have received follow-up care as scheduled at the Orthopedic Clinic throughout November and December of 2009. (Doc. no. 20-5, pp. 44-65.) Plaintiff did not present to Dr. Rogers with any further left hand concerns following his November 5th evaluation. (Rogers Aff. ¶ 15.)

On November 19, 2009, Defendant Way received a "Health Services Request Form" in which Plaintiff reported pain in his left hand and jaw, as well as mental health concerns. (Way Aff. ¶ 13 & Ex. A. (bates stamp "KITCHENS 134" attached to Aff.).) She scheduled

Plaintiff for an appointment, but he failed to appear for the appointment, which she documented in his medical records. (Id.) Similarly, Plaintiff submitted a request form complaining of left hand pain and a left foot injury on December 1, 2009, but failed to appear when he was scheduled for an appointment that day. (Id. ¶ 14.)

Defendant Way unequivocally denies ever telling Plaintiff that his left hand was not injured. (Id. ¶ 17.) Dr. Rogers, who was a physician at the Jail during the entire period of Plaintiff's incarceration there, attests that at no time during his treatment of Plaintiff did Plaintiff ever indicate that Defendant Way denied, delayed, or refused to provide care for his left hand injury. (Rogers Aff. ¶¶ 19-20.) In his deposition testimony, Plaintiff conceded that he did not know of any occasion in which Defendant Way had prevented him from seeing a physician or receiving treatment for his left hand injury; he further testified that he did not know of any act or omission by Nurse Way that caused any injury to his left hand. (Pl.'s Dep., pp. 18-19, 21-22, 27.) There is no evidentiary support in the record to substantiate Plaintiff's claim that his hand was fractured, or that he suffered from "dead hand" or carpal tunnel syndrome. (See generally doc. no. 20-5.)

Furthermore, Defendant Farmer denies Plaintiff's allegation that she refused to accept a sick-call slip concerning his antidepressant medication.[4] (Farmer Aff. ¶¶ 10-11, 13.) When asked at his deposition about this allegation, Plaintiff offered no indication that Defendant Way's purported refusal to accept his sick-call slip resulted in any delay in receiving

---

[4]Plaintiff clarified in his deposition that his allegation of Defendant Farmer refusing to accept his sick-call slip refers specifically to the date of January 12, 2010. (Pl.'s Dep., p. 32.) Defendant Farmer specifically denies refusing to accept a sick-call slip on that date, and she generally denies ever refusing to accept a sick-call slip from Plaintiff. (Farmer Aff. ¶¶ 10-11.)

7

psychiatric care or caused him any harm. (See Pl.'s Dep., p. 25.) Similarly, Defendant Farmer denies the allegation in Plaintiff's amended complaint that she refused to provide him with prescribed pain medication. (Farmer Aff. ¶¶ 12-13.) Plaintiff expounded on this allegation during his deposition, stating that her alleged failure to provide his medication was limited to two or three times during his approximately 10-month incarceration at the Jail. (Pl.'s Dep., p. 26.) The only adverse effect that Plaintiff identified as resulting from being deprived of his medications involved a physical altercation with another inmate sometime around February of 2010; Plaintiff stated that the altercation did not cause him any injury, but noted that he was disciplined by being put in "lockdown." (See id. at 28-29.) Plaintiff testified that he was not sure whether Defendant Farmer was responsible for this alleged failure to provide his medication on that occasion. (Id.) Dr. Rogers attests that, during the course of Plaintiff's treatment at the Jail, Plaintiff never indicated to him that Defendant Farmer had refused to provide him with medications, and never complained about any of the care he received from Defendant Farmer. (Rogers Aff. ¶¶ 18, 21.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[5]

---

[5] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Merits of Plaintiff's Claims

As noted above, Plaintiff asserted in his amended complaint that he received delayed and inadequate medical treatment due to Defendants' actions, and that Defendants were therefore deliberately indifferent to his serious medial needs in violation of his constitutional rights. To prevail on a claim of deliberate indifference to serious medical needs, Plaintiff must show: (1) that he had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that his injury was caused by Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (noting that a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the requirement of showing an objectively serious medical need, a prisoner must show that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To show that Defendants were deliberately indifferent to his medical needs, Plaintiff must offer proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by

10

(3) following a course of action which constituted "more than mere negligence." Id.

In addition, as a prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill, 40 F.3d at 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners."). Whether such delay amounts to deliberate indifference to a serious medical need depends on the length of the delay as well as "the nature of the medical need and the reason for the delay." Farrow, 320 F.3d at 1247.

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must

> allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

With these principles in mind, the Court turns its attention to Defendants' motion for summary judgment on Plaintiff's claims.

### 1. Plaintiff's Claims Against Defendant Way

As Defendants persuasively argue, based on the evidence before the Court, Defendant Way is entitled to judgment as a matter of law.

Assuming for the sake of argument that Plaintiff did have a serious medical need, there is no evidence of deliberate indifference to that need on the part of Defendant Way. Rather, the evidence shows that Plaintiff received immediate medical attention following his left hand injury on October 28, 2009, with Dr. Rogers ordering x-rays that showed Plaintiff "did not have any acute fracture or dislocation of his left hand." (Rogers Aff. ¶ 9 & Ex. A.) The next day, upon receipt of Plaintiff's Health Services Request Form complaining of his left hand, Defendant Way examined Plaintiff, noting that his hand was "swollen and painful." (Way Aff. ¶¶ 7-8 & Ex. A.) In accordance with her role as an RN, she referred him to a physician and documented several recommendations for Plaintiff's treatment, including elevation of Plaintiff's hand, administration of standard pain medication (Motrin), and review and presentation of an inmate education handout. (Id. ¶ 9 & Ex. A; Pl.'s Dep., Ex.

2.) Because of her referral, Plaintiff received a prescription for pain medicine the same day and was seen by Dr. Rogers the next day. (Way Aff. ¶ 10; Rogers Aff. ¶ 10.)

Defendant Way's next contact with Plaintiff occurred on November 2, 2009, when Plaintiff appeared at the Jail's medical department. During that examination, she took Plaintiff's vital signs and examined his hand, which she found to be warm and swollen. (Id. ¶ 21 & Ex. A.) After reviewing his records and seeing that he had previously had two x-rays, she brought Plaintiff's condition to the attention of Dr. Pope, who ordered that Plaintiff be sent to the University Hospital emergency room for additional treatment. (Id.) Defendant Way's subsequent treatment of Plaintiff was limited to scheduling two appointments in response to complaint forms, both of which Plaintiff failed to attend. (Way Aff. ¶¶ 13-14.)

In light of this uncontested evidence, Plaintiff has failed to identify any act or omission on the part of Defendant Way that amounts to – or even approaches – deliberate indifference to a serious medical need. Far from disregarding any risk to Plaintiff's health by following a course of action which constituted more than mere negligence, see Goebert, 510 F.3d at 1326, Defendant Way responded promptly and appropriately to each of Plaintiff's complaints. Consistent with her role as an RN, she examined Plaintiff each time he complained about his left hand and, on each occasion, followed up by referring him to a physician or obtaining orders from a physician regarding his treatment. Perhaps most telling is the fact that, when asked at his deposition to specify his complaint about the treatment provided by Defendant Way, Plaintiff conceded that he did not know of any occasion in which Defendant Way had prevented him from seeing a physician or receiving treatment for his left hand injury; he further testified that he did not know of any act or omission by Nurse

13

Way that caused any injury to his left hand. (Pl.'s Dep., pp. 18-19, 21-22, 27.)

Furthermore, nothing in the record supports the conclusion that Defendant Way was deliberately indifferent to Plaintiff's medical needs because of a delay in providing appropriate medical treatment. As noted above, Plaintiff received immediate attention when he injured his hand, and upon submitting a complaint following his initial treatment, was seen again by Defendant Way the next day. Taking into account the seriousness of the injuries complained of and the length of the delay in Plaintiff's treatment, see Farrow, 320 F.3d at 1247, the evidence in the record is not indicative of any significant delay in Plaintiff's treatment, much less a delay that rises to the level of a constitutional violation. Moreover, this claim must fail in light of the fact that Plaintiff has not placed "verifying medical evidence in the record to establish the detrimental effect" of the delay in receiving treatment for his hand see Hill, 40 F.3d at 1188, and has not presented any evidence showing that he suffered any injury caused by such delay.[6] Goebert, 510 F.3d at 1326.

In short, the evidence in the record shows Plaintiff's claims of deliberate indifference against Defendant Way is completely devoid of merit. Therefore, there are no genuine issues of material fact to be decided at a trial regarding such claims, and Defendants' motion should be granted with respect to these claims.

---

[6]Plaintiff's claims that his hand was fractured and that he suffered from "dead hand" and carpal tunnel syndrome are unsupported by the affidavits of Plaintiff's medical providers at the Jail and his medical records from University Hospital. (See generally Rogers Aff.; doc. no. 20-5.)

14

### 2. Plaintiff's Claims Against Defendant Farmer

Similarly, the record evidence shows that summary judgment should be granted as to Plaintiff's claims against Defendant Farmer. Notably, regarding Plaintiff's hand injury, Defendant Farmer's contact was limited to a brief, routine examination on November 2, 2009, upon Plaintiff's return from University Hospital. During that examination, she noted the condition of his hand and proceeded to contact the physician in charge to obtain orders for Plaintiff's pain medication; pursuant to verbal orders from Dr. Pope, she provided a specified dose of pain medication. (Farmer Aff. ¶ 6-7 & Ex. A.) Plaintiff concedes that Defendant Farmer had no significant involvement in treating his hand injury (see Pl.'s Dep., p. 22), and there is no evidence suggesting that she was deliberately indifferent to any medical need resulting from his hand injury.

Therefore, Plaintiff's primary claims against Defendant Farmer involve his allegations that she refused to accept a sick-call slip regarding his antidepressant medication and that she failed to provide him with pain medication that he had been prescribed. (Doc. no. 7, pp. 6-7.) Notably, however, as Defendants point out, there is no evidence showing that Plaintiff suffered any injury as a result of these alleged actions. (See doc. no. 20-1, pp. 21-23.) Accordingly, Plaintiff's claims against Defendant Farmer relating to her alleged failure to accept his sick-call slip and provide him with prescribed medications do not satisfy the requirement of showing an injury caused by her purportedly wrongful conduct. See Thomas, 614 F.3d at 1317 n.29; Goebert, 510 F.3d at 1326.

Furthermore, assuming the truth of Plaintiff's deposition testimony that his prescribed

15

pain medication was not provided on two or three occasions during his 10-month period of incarceration, there is no evidence suggesting that Nurse Farmer acted with the subjective intent of intentionally depriving Plaintiff of his medication. See Campbell, 169 F.3d at 1363 (noting that Eighth Amendment is not violated without showing of a "mental element of putative intent"); Williams v. Arnold, 207 F. App'x 980, 984 (11th Cir. 2006) (*per curiam*) (holding that, in context of § 1983 claim premised on failure to provide prescribed medication, the plaintiff "must essentially show that [the defendants] intended to punish him by depriving him of his medicine").

In sum, it is apparent that Plaintiff cannot prevail on his claims against Defendant Farmer, as essential elements of such claims – namely, a showing of an injury caused by her alleged actions and a showing of subjective intent – are not supported by any evidence. Therefore, Defendants motion for summary judgment should also be granted with respect to Plaintiff's claims against Defendant Farmer.

### III. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 20), that a final judgment be **ENTERED** in favor of Defendants Farmer and Way, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 30th day of June, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

16